STATE of Wisconsin, Plaintiff-Respondent,

v.

Barbara E. HARP, Defendant-Petitioner.

Court of Appeals

*No. 2004AP3240–CR. Submitted on briefs June 23, 2005.*
*—Decided October 27, 2005.*

2005 WI App 250

(Also reported in 707 N.W.2d 304.)

On behalf of the defendant-petitioner, the cause was submitted on the briefs of *Aaron N. Halstead, Kathleen M. Lounsbury,* and *Danielle L. Carne,* of *Shneidman, Hawks & Ehlke, S.C.,* Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager,* attorney general, and *Michael C. Sanders,* assistant attorney general.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. DYKMAN, J. Barbara Harp appeals from a nonfinal order of the circuit court declaring a mistrial in a felony case involving two counts of intentionally abusing a patient at a health care facility under WIS. STAT. § 940.295(3)(a)1. and (b)2. (2003–04),[1] and denying a motion to dismiss the charges on double jeopardy grounds. The circuit court granted the State's motion for a mistrial after determining that Harp's counsel had elicited alibi testimony from a witness without giving

_____

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

_____

the State the required notice of that witness under Wis. STAT. § 971.23(8)(a).[2] We grant Harp's petition to review the circuit court's interlocutory order.[3]

¶ 2. Harp contends that her counsel was not required to give notice of the witness because the witness's testimony was not alibi testimony, and therefore the circuit court erred by ordering a mistrial. Because we conclude that the testimony of the witness was not alibi testimony, notice was not required and the circuit court therefore failed to properly exercise its discretion in ordering a mistrial. *State v. Seefeldt*, 2003 WI 47, ¶ 28, 261 Wis. 2d 383, 661 N.W.2d 822. Accordingly, we reverse.

---

[2] WISCONSIN STAT. § 971.23(8)(a) provides:

> If the defendant intends to rely upon an alibi as a defense, the defendant shall give notice to the district attorney at the arraignment or at least 15 days before trial stating particularly the place where the defendant claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to the alibi, if known. If at the close of the state's case the defendant withdraws the alibi or if at the close of the defendant's case the defendant does not call some or any of the alibi witnesses, the state shall not comment on the defendant's withdrawal or on the failure to call some or any of the alibi witnesses. The state shall not call any alibi witnesses not called by the defendant for the purpose of impeaching the defendant's credibility with regard to the alibi notice. Nothing in this section may prohibit the state from calling said alibi witnesses for any other purpose.

[3] We grant Harp's petition because the mistrial order implicates her right against double jeopardy. "Given the serious constitutional questions raised by claims of double jeopardy, review of such orders will often be necessary to protect the accused from 'substantial or irreparable injury,' one of the three criteria for testing the appropriateness of review under sec. 808.03(2)." *State v. Jenich*, 94 Wis. 2d 74, 97, 292 N.W.2d 348 (1980).

### Background

¶ 3. Barbara Harp, then a certified nursing assistant (CNA) at the Columbia County Healthcare Facility (Columbia), was charged with two counts of intentionally abusing a patient under circumstances that cause bodily harm. The criminal complaint was filed after another CNA at Columbia, Stephanie Kleist, reported that on July 20, 2003, while working with Harp, she heard Harp slap Jody Parker, a resident, and then saw Harp wiping blood off Parker's face. The complaint was later amended to include a second incident, which allegedly occurred on May 16, 2003.

¶ 4. The case against Harp went to trial on September 23, 2004. The prosecution called Kleist, who testified that on May 16, 2003, Harp worked as her partner in her end of the hallway of patients' rooms, known as Birch Boulevard. She testified that Parker was in the section for which Harp was responsible, but that she often assisted Harp in caring for Parker. She averred that on the May 16 incident, she saw Harp hit Parker in the forehead four or five times.

¶ 5. After the prosecution rested, Harp's counsel called Leah Stahl, another CNA employed at Columbia. She testified that in March 2003, Birch Boulevard, which had previously included a mixture of patients with various needs, was split into two sections, one end of the hallway housing patients with dementia, and the other end remaining mixed. Stahl then gave the following testimony:

Q: . . . [W]hat area of the unit is Mr. Parker in?

A: He is on the other end, with the mixed residents.

Q: Now, were you a caregiver to Mr. Parker in May of 2003?

A: I was on the dementia end.

Q: And did you have occasion to work with or care for Mr. Parker during this time period, May of 2003?

A: A few times, if we were needed to go down and help the other end a little bit.

. . . .

Q: Now . . . the CNA's are paired as partners?

A: Yes.

Q: And at any time, were you Barb Harp's partner?

A: Yes.

Q: Until when?

A: It was after the Memorial holiday.

Q: Okay. You were her partner after Memorial holiday or before?

A: No, prior to that.

Q: And when you say the Memorial holiday, are you meaning of 2003?

A: Yes.

Q: So, you were Ms. Harp's partner before Memorial holiday 2003. And what did that mean in the sense of being her partner?

A: We were paired up on the dementia end.

446

Q: And during that period of time, was Mr. Parker one of the residents that would have been a person for whom you and Ms. Harp cared as partners?

A: No.

Q: He was not on the dementia end? . . .[A]t some point in time did the two of you split, like you were no longer partners?

A: Just when the change after the holiday weekend.

. . . .

Q: Who did Ms. Harp's partner become [at that point]?

A: Stephanie.

At the request of Harp's counsel, the court took judicial notice that Memorial Day 2003 fell on May 26.

¶ 6. Later, the prosecutor cross-examined Stahl:

Q: How can you be certain of that date?

A: Because we were going to have a switch after the Memorial weekend.

. . . .

Q: . . .[H]ad Barbara Harp been in charge of caring for Jody Parker at any time prior to Memorial weekend?

A: She might have done care on him at one time. I don't know what time or date or—

447

Q: Do you recall working with Barbara Harp on May 16th, of 2003?

A: Yes. We were partners.

Q: And you were partners on the dementia unit?

A: Yes.

Q: So, not the end that Jody Parker would be on?

A: Yes.

Q: How do you recall [the exact] date?

A: I don't recall [the exact] date. I just know that we were partners. We were full-timers, and we worked together when we were scheduled.

. . . .

Q: Do you know that you were scheduled to work on May 16th of 2003?

A: Yes.

Q: How do you know that?

A: Because I worked all the time.

Q: Every day of the week?

A: I picked up lots of days.

Q: So, you're certain you were working on May 16th of 2003?

A: Yes.

. . . .

Q: Do you know what day of the week May 16th of 2003 was?

A: No.

Q: But you're certain you were working that day?

A: Pretty sure.

Q: Pretty sure or positive?

A: Pretty sure.

Q: And if you weren't working, would it be possible that Barbara Harp would be working on the other end, the non-dementia patients on Birch?

A: No.

¶ 7. At the conclusion of Stahl's testimony, the prosecutor moved for a mistrial, arguing that Stahl had just provided alibi testimony, and that the State had not received the required notice of an alibi witness. The court declined to order a mistrial, subject to reconsideration, noting that "the testimony that came in as to her actually working on the 16th did come in through cross examination. Defense counsel never asked specifically whether she was working on that day." Later, the court explained that the potential alibi testimony regarding Stahl's recollection of working with Harp on that day "didn't come through the testimony of the witness on direct examination, only through cross." The court concluded that it wanted "to hear what some other witnesses have to say and where it goes."

¶ 8. The defense rested with Harp's counsel stating that "in order not to . . . run afoul of any claim that we're attempting to present alibi witnesses, I'm not

going to call further witnesses." The court then recessed the proceedings to see if Columbia had records showing which CNA's were paired together on May 16, 2003. No such records were found. The court declared a mistrial.

¶ 9. On October 4, 2004, Harp filed a motion to dismiss the charges filed against her based on the double jeopardy clauses of the federal and state constitutions and WIS. STAT. § 972.07. The court denied Harp's motion. She now appeals the trial court's mistrial order and its order denying her motion to dismiss the complaint.

### *Standard of Review*

¶ 10. Generally, the level of deference we afford a circuit court's decision to grant a mistrial depends upon the circumstances of the case. *Seefeldt*, 261 Wis. 2d 383, ¶¶ 25–28. In *Arizona v. Washington*, 434 U.S. 497, 507–10 (1978), the U.S. Supreme Court described "two ends of the spectrum of deference." *Seefeldt*, 261 Wis. 2d 383, ¶ 25. At one end are cases in which there is reason to believe that the prosecutor has sought a mistrial to gain a tactical advantage or to harass the defendant. *Washington*, 434 U.S. at 507–08. On the other is the mistrial based on the judge's belief that the jury is unable to reach a verdict. *Id.* at 509. A mistrial premised on the latter circumstance is "accorded great deference by a reviewing court," *id.* at 510, whereas a mistrial resulting from the former is subject to the "strictest scrutiny." *Id.* at 508. In any case, a court reviewing a circuit court's order of a mistrial must, at a minimum, "satisfy itself that the trial judge exercised 'sound discretion' in declaring a mistrial." *Seefeldt*, 261 Wis. 2d 383, ¶ 28.

¶ 11. The State contends that the circumstances of this case are analogous to those in *State v. Williams*, 2004 WI App 56, ¶ 28, 270 Wis. 2d 761, 677 N.W.2d 691. There, we applied deferential review to a trial court's mistrial order after Williams' counsel asked what the court believed to be an improper question of a witness. *Id*. They argue that as in *Williams*, the trial court's mistrial order was necessitated by improper questioning by defense counsel (eliciting alibi testimony without giving the state prior notice) and therefore our review should be highly deferential. Harp counters that this case is unlike *Williams* because the questioning of Harp's counsel was not improper. Stahl was not an alibi witness and hence notice of her appearance was not required, or, alternatively, Stahl provided alibi testimony only upon the prosecutor's cross-examination, contentions we address later. As a result, Harp asserts, we must apply strict scrutiny to the trial court's order of a mistrial.

¶ 12. We need not address the parties' dispute about the level of deference demanded by the particular circumstances because no matter the standard of review, our result would be the same. Our analysis below concludes that the circuit court's mistrial order was based on an error of law, and thus the court's order was not an exercise of "sound discretion." *Seefeldt*, 261 Wis. 2d 383, ¶ 28.

### *Analysis*

¶ 13. The Fifth Amendment to the U. S. Constitution and article I, section 8 of the Wisconsin Constitution prevent the State from trying a defendant mul-

tiple times for the same offense.[4] "[G]iven the importance of the constitutional protection against double jeopardy, the State bears the burden of demonstrating a 'manifest necessity' for any mistrial ordered over the objection of the defendant." *Seefeldt*, 261 Wis. 2d 383, ¶ 19 (citations omitted). "Manifest necessity" means a "high degree" of necessity. *Id.*

¶ 14. The trial court based its mistrial order on the conclusion that defense counsel called an alibi witness without giving proper notice. The statute requiring notice of an alibi witness states in relevant part:

> NOTICE OF ALIBI. (a) If the defendant intends to rely upon an alibi as a defense, the defendant shall give

---

[4] The Fifth Amendment to the United States Constitution provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." Article I, section 8 of the Wisconsin Constitution provides that "no person for the same offense may be put twice in jeopardy of punishment . . . ." Two recent decisions of the Wisconsin Supreme Court have concluded that certain provisions of the state constitution provide greater protections than analogous provisions of the federal constitution. *State v. Knapp*, 2005 WI 127, ¶¶ 1–2, 285 Wis. 2d 86, 700 N.W.2d 899 (construing protection against self-incrimination in article I, section 8 of the Wisconsin Constitution to be greater than the Fifth Amendment); *State v. Dubose*, 2005 WI 126, ¶¶ 39–41, 285 Wis. 2d 143, 699 N.W.2d 582 (construing due process protection in article I, section 8 of the Wisconsin Constitution to be greater than the Fourteenth Amendment). Following *State v. Seefeldt*, 2003 WI 47, ¶ 15 n.4, 261 Wis. 2d 383, 661 N.W.2d 822, our analysis does not distinguish between the double jeopardy protections of the state and federal constitutions. *Id.* ("In construing Wisconsin's protection against double jeopardy protection, we are guided by the rulings of the U.S. Supreme Court.") (citation omitted).

notice to the district attorney at the arraignment or at least 15 days before trial stating particularly the place where the defendant claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to the alibi, if known.

Wis. Stat. § 971.23(8). Harp contends that Stahl was not an alibi witness subject to the notification requirement of § 971.23(8)(a), an assertion that raises a question of statutory interpretation that we review de novo. *State v. Brown*, 2003 WI App 34, ¶ 12, 260 Wis. 2d 125, 659 N.W.2d 110. If the trial court's determination that Stahl was an alibi witness was based on a mistaken view of § 971.23(8)(a), we must conclude that there was not a manifest necessity for a mistrial in this case, and the court therefore failed to exercise sound discretion in ordering a mistrial.

¶ 15. The statute does not define "alibi." The state supreme court offered the following definition of the term in *State v. Shaw*, 58 Wis. 2d 25, 30, 205 N.W.2d 132 (1973), *overruled on other grounds, State v. Poellinger*, 153 Wis. 2d 493, 505, 451 N.W.2d 752 (1990): "The word, 'alibi,' is merely a short-hand method of describing a defense based on the fact that the accused was elsewhere at the time the alleged incident took place. The word, 'alibi,' is simply the Latin word for 'elsewhere.' "

¶ 16. In *Shaw*, a defendant charged with burglary requested a jury instruction on alibi based on his testimony that he was near but not at the scene of the crime at the time. *Shaw*, 58 Wis. 2d at 28. The trial court refused the request because it did not believe that Shaw had given alibi testimony. The supreme court affirmed, concluding that "in light of the definition of

alibi, it does not appear this testimony amounted to such a defense." *Id.* at 30. The *Shaw* court discussed the meaning of "alibi" at length:

> One authority has described the purpose of alibi: "Its only design is to prove that the defendant, being at another place at the time, could not have committed the offense charged." 1 Wharton, *Criminal Law & Procedure,* p. 260, sec. 121 (12th ed. 1957). Other courts have held that an alibi is a defense that at the time of the crime the defendant was so distant from the scene that his participation in the crime was impossible. *See Williams v. State* (1905), 123 Ga. 138, 51 S.E. 322; *People v. Lukoszus* (1909), 242 Ill. 101, 89 N.E. 749; *Leeth v. State* (1951), 94 Okl.Cr. 61, 230 P.2d 942; *State v. Ovitt* (1967), 126 Vt. 320, 229 A.2d 237. *See also* 21 Am. Jur. 2d, *Criminal Law,* p. 205, sec. 136. The Wisconsin cases in which this defense has been interposed have generally involved an alibi where the defendant was in another city or another part of the same city at the time of the offense. *See Berg v. State* (1969), 41 Wis. 2d 729, 165 N.W.2d 189; *State v. Richardson* (1969), 44 Wis. 2d 75, 170 N.W.2d 775; *State v. Stockman* (1970), 46 Wis. 2d 243, 174 N.W.2d 249. However, in *State v. Grahn* (1963), 21 Wis. 2d 49, 123 N.W.2d 510, the defendant claimed that at the time of the offense he was at home, his home being not far from the scene of the crime.
>
> Of necessity, the defense of alibi involves presence of the defendant at a place other than the scene of the crime, at the time the crime was committed. "If the defendant raises an alibi, he is in effect denying the claim of the prosecution that he was at the scene of the crime at the time it was committed." 1 Wharton, *Criminal Evidence,* pp. 36–37, sec. 23 (13th ed. 1972). As stated in 21 Am. Jur. 2d, *Criminal Law,* p. 206, sec. 136: "(S)ince an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it

454

possible for the accused to be the guilty person is no alibi at all." Here, the exact time of the burglary is unknown but it happened after 9:30 p.m. on June 29th and during the probable time the crime was committed, Shaw was in the immediate vicinity of the scene of the crime. No alibi was thus presented.

¶ 17. Harp contends that Stahl's testimony was not of the nature of an alibi because it did not include testimony about Harp's location on May 16. Harp notes that on direct examination Stahl did not address her knowledge of Harp's whereabouts on May 16. Rather, she testified generally that she was Harp's partner until at least Memorial Day, and that the two worked on the end of the hallway that did not include Parker. Harp notes that the State did not raise the issue of alibi during her direct examination of Stahl, instead choosing to cross-examine her, focusing on her recollections of May 16. Harp asserts that if Stahl provided alibi testimony, it was elicited by the State, not her.

¶ 18. Citing *Shaw*, Harp further contends that Stahl's testimony did not provide Harp with an alibi because it did not tend to show that it was "physically impossible" for Harp to have been in Parker's room on May 16, or that Harp was at a specific, different location on that date. *Shaw*, 58 Wis. 2d at 31. Rather, Stahl's testimony put Harp "in the immediate vicinity of the scene of the crime," on the other end of the hallway, and thus could not be an alibi under Wisconsin law. *Id.*

¶ 19. The State counters that *Shaw* is distinguishable on grounds that it involved the question of whether the defendant had established an alibi such that he was entitled to a jury instruction on alibi, not whether the defendant failed to provide notice of an alibi witness. It then asserts that alibi testimony need not show a physical impossibility for the defendant to

have committed the crime but is any testimony that casts doubt on the State's evidence by showing that the defendant did not commit the crime because he or she was elsewhere, citing 27 AM. JUR. PROOF OF FACTS 2D *Alibi Defense* § 1 (1981) ("Evidence can be admissible as alibi evidence even if it does not show that that defendant was elsewhere at the time of the crime.").

¶ 20. The State contends that this view of alibi testimony is expressed in *Jensen v. State*, 36 Wis. 2d 598, 153 N.W.2d 566 (1967). There, the defendant, who allegedly sexually assaulted his daughter, testified that he was not at home that night but was out at the bars with his girlfriend and did not return until the following morning. *Id.* at 603. In rebuttal, the State presented evidence that his girlfriend had worked that night. *Id.* Jensen then sought to call the girlfriend to testify that she had traded shifts with a co-worker. *Id.* The supreme court determined that evidence that the defendant's girlfriend had traded shifts at work was alibi evidence in the defendant's case and affirmed the trial court's refusal to permit her testimony because Jensen had not provided notice of an alibi witness. *Id.* at 607a. The State notes that Jensen's offer of proof, like Stahl's testimony, did not offer specific testimony as to the location of the defendant, only general information that supported the inference that the defendant was at a different location at the time.

■

¶ 21. We agree with Harp that Stahl did not give alibi testimony under Wisconsin law. Stahl's testimony on direct examination included nothing about Stahl's recollections about Harp's location on May 16. Stahl testified only that she had been paired with Harp until Memorial Day of that month; that they worked together on the dementia end of the hallway; and that Parker

was in the mixed end of the hallway. Her testimony thus impeached Kleist's testimony that Harp was her partner on May 16, 2003, and that Parker was in the section for which Harp was responsible. Only upon the prosecutor's repeated questions to Stahl about her recollections of May 16 did Stahl's testimony begin to approach alibi territory. The State should have asked for a ruling of the court if it believed that Harp's direct examination of Stahl had poisoned the well; instead, its cross-examination of Stahl ensured the lethality of the water.[5]

¶ 22. Regardless, Stahl's testimony did not constitute an alibi because it placed Harp in the same building and in the same hallway of the crime scene. Her testimony not only did not indicate that it was physically impossible for Harp to have committed the offense, it placed her "in the immediate vicinity of the crime." *Shaw*, 58 Wis. 2d at 31. Such testimony is not an alibi under *Shaw*. "[I]n raising an alibi the defendant is in effect denying that he was present at the scene of the crime at the time it was committed." *State v. Horenberger*, 119 Wis. 2d 237, 242–43, 349 N.W.2d 692 (1984).[6]

[5] The prosecutor asked Stahl if she "recall[ed] working with Harp on May 16, 2003," to which Stahl replied "yes," then asked additional questions specific to that date. The prosecutor's own comments before the court on the motion for a mistrial suggest that it was not until the cross-examination that testimony implicating the alibi issue was elicited: "When I asked her the questions on cross examination, I was trying to figure out *if* she was going to *specifically testify that on that date* she was working with Ms. Harp *because that would be the crux of the alibi.*" (Emphasis added.)

[6] Because we conclude that the trial court did not exercise sound discretion in ordering the mistrial, we need not address Harp's alternative argument that the State waived its right to

¶ 23. We find the State's reliance on *Jensen* to be misplaced. *Jensen* predates *Shaw* and, unlike *Shaw*, contains no substantive discussion of the nature of an alibi. *See generally Jensen*, 36 Wis. 2d 598. Moreover, in *Jensen*, the defendant had already developed the defense of alibi by testifying that he was not at the crime scene on the night of the crime but was out at the bars with the witness. The witness's proffered testimony in *Jensen* was arguably alibi testimony because it did not "merely rebut the testimony of [the prosecution's witness] . . . because the testimony that she was not at work corroborate[d] defendant's own testimony that she was indeed with him." *Id.* at 606. Here, Harp had not advanced a defense of alibi that Stahl's testimony would have reinforced.

¶ 24. Finally, we do not follow the State's argument that the circumstances in which the question of the meaning of alibi arose in *Shaw* somehow diminishes *Shaw*'s import here. Nothing in *Shaw* suggests that its definition of alibi is limited to cases in which the question is whether a defendant is entitled to a jury instruction on alibi. We can find no reason to limit *Shaw* in such a manner.

¶ 25. In summary, we conclude that Stahl's testimony was not of the nature of an alibi, and therefore notice of an alibi witness was not required. Because the circuit court concluded otherwise and based its mistrial order on this mistaken view, it failed to exercise sound discretion in ordering a mistrial. We therefore reverse.

*By the Court.*—Order reversed.

object to Stahl's testimony when it did not do so immediately following the direct examination.