Sᴛᴀᴛᴇ of Wisconsin, Plaintiff-Respondent,

v.

Forrest Andre Sᴀᴜɴᴅᴇʀs, Defendant-Appellant.

Court of Appeals

*No. 2010AP2393–CR. Submitted on briefs August 31, 2011.*
*—Decided November 22, 2011.*

2011 WI App 156

(Also reported in 807 N.W.2d 679.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert A. Kagen* of *Goldstein & Kagen*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J. Forrest Andre Saunders appeals the judgment convicting him of one count of burglary, contrary to Wis. Stat. § 943.10(1m)(a) (2009–10).[1] He also appeals the order denying his postconviction motion. Saunders argues that at trial the prosecutor—contrary to Wis. Stat. § 971.23(8)(a), Wisconsin's notice of alibi statute—improperly commented on the fact that a man named Paul, at whose house Saunders claimed to be during the burglary, did not testify at trial. He also argues that the trial court erred in denying him an evidentiary hearing to determine whether one of the

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

jurors slept during his trial. We disagree. We hold that because Saunders never filed a notice of alibi as required by § 971.23(8)(a), and because Paul could not have been an alibi witness as he was not—according to Saunders—at home when Saunders allegedly went to his house, the statute does not apply, and the prosecutor's comments were therefore not improper. Regarding Saunders' sleeping juror arguments, we conclude that any party or counsel who notices that a juror has fallen asleep at trial must bring the issue to the trial court's attention during trial as soon as practicable after the person notices the sleeping juror so that the problem can immediately be resolved. Because Saunders waited until after trial to bring the issue to the trial court's attention, it was impossible for the trial court to determine the extent of the problem, if any; thus, Saunders forfeited his right to appeal the trial court's refusal to conduct a post-trial hearing on that issue. We therefore affirm the judgment of conviction and the trial court's order.

## I. BACKGROUND.

¶ 2.   Saunders' conviction stems from an allegation that on the night of September 14, 2008, he entered the residence of Thomas H. Cheney and stole Cheney's iPod and attachments.

¶ 3.   Sometime after 10:00 p.m. on September 14, 2008, Cheney, who lived on the 2700 block of North Downer Avenue in Milwaukee, dozed off while reading in his living room. Many of the lights in his house were still on, and the kitchen door was unlocked.

¶ 4.   Cheney awoke to a noise from the kitchen. When he went there to investigate, he discovered an intruder—a man wearing a dark, baggy jacket and carrying a backpack that was, from his recollection, a

163

combination of a dark color and a light blue or gray color. Cheney swore at the intruder, who fled out the back door.

¶ 5.  Cheney called 9-1-1 "almost immediately" and described the intruder to police. Minutes later, Milwaukee police officers Cory Washington and Bryant DeValkenaere—who were patrolling in the area together in an unmarked police car—heard the burglary dispatch report. At the time they heard the dispatch, Washington and DeValkenaere were heading eastbound on East Locust Street toward North Downer Avenue. It was a drizzly night, but the area was illuminated by street lights.

¶ 6.  Shortly after hearing the dispatch report, Officer DeValkenaere spotted a man with a backpack walking westbound on the 2500 block of East Locust Street, approximately two blocks from Cheney's house. The man carried a backpack and was walking by himself. No one else was around. Officer Washington, who was driving, put the police car in reverse to get a better look at the man. As she did so, she saw him throw "what looked like a white object . . . between the sidewalk and [a] fence," into a small bush.

¶ 7.  Officer Washington stopped the police car, and both she and Officer DeValkenaere exited and approached the man with the backpack, who proved to be Saunders. According to Washington, Saunders told police that he was coming from the house of a friend of his named Paul. When Washington asked Saunders where Paul lived, Saunders stated that he did not know and that Paul was not home. Meanwhile, Officer DeValkenaere went to the small bush where Saunders had thrown the white object. There, DeValkenaere found a

black iPod attached to a white power adaptor and white car adaptor. Although the bush was wet, the iPod and attachments appeared dry.

¶ 8.   Other police officers soon arrived at the scene and detained Saunders while Washington and DeValkenaere went to Cheney's house. By that point, Cheney had noticed that his iPod, along with its cables and charger, was missing from his kitchen countertop near his back door. Cheney told the officers that the intruder was six feet tall,[2] wore dark clothing, and carried a backpack.

¶ 9.   Officers Washington and DeValkenaere then returned to Saunders, arrested him, and searched his backpack. Although Saunders was clad in a light-colored shirt that was mostly dry at the time, officers found a wet, black jacket in his backpack. The officers brought the iPod back to Cheney. Cheney identified the iPod as his, in part by pulling up photos of a Door County vacation that he had stored on it. Cheney did not know Saunders, nor did he give him permission to enter his house or take his iPod.

¶ 10.   Saunders was charged with burglary.

¶ 11.   At trial, Saunders testified in his own defense. Saunders testified that on the night in question, he had gone to the residence of his "friend" named Paul[3] to pick up "albums and . . . things." He left Paul's house because Paul was not at home. According to Saunders, Paul resided on Stowell Avenue and Park Place, approximately three to four blocks from where police stopped him. Saunders testified that as he was walking toward a bus stop, a man on a mountain bike rode up to

---

[2] Saunders is six feet tall.

[3] It is unclear from the record whether Saunders' friend Paul exists.

him and offered to sell him an "electrical object." Saunders said he declined the offer. According to Saunders, the man on the mountain bike must have been "spooked" when police drove by, because he threw down the gadget he was trying to sell and "took off right down the alley." Saunders further testified that at some point during his walk back from Paul's house he had put his wet jacket inside his backpack because the high humidity made him sweat.

¶ 12. On cross-examination, the prosecutor probed Saunders' account of going to Paul's house.

Q: When you were at Paul's house, when you knocked on the door, was anybody home?

A: No one answered.

Q: So there was— No one can confirm that you went there that night?

A: No.

Q: But you said you had planned to go there that night. Paul knew you were going to go there and pick some items up; is that correct?

A: Yes.

Q: Is Paul here to testify today?

[DEFENSE COUNSEL]: Objection. Shifting burden.

[THE COURT]: Overruled. You have to answer.

[THE DEFENDANT]: No, he's not.

¶ 13. Saunders admitted that he did not know Paul's exact street address. Saunders also admitted that he was walking in the rain to a bus stop that was a further distance away from his friend Paul's house than another bus stop.

166

¶ 14. During closing argument, the prosecutor returned to the subject of the missing witness, saying:

> Finally, even though [Saunders] was supposed to have arranged this meeting with Paul to pick up whatever stuff it was and that's where he was going that night and presumably said Paul knew about this, Paul was not here to testify about [the fact that] they were to meet on this night that [Saunders has] been accused of burglary.

¶ 15. The jury returned a guilty verdict on the burglary charge. After polling the jurors on the verdict, the trial court discharged the jury. The prosecutor then moved for judgment on the verdict, which the trial court granted over Saunders' request for judgment of acquittal. At this point, the following exchange occurred:

> [DEFENSE COUNSEL]: Judge, Mr. Saunders asked me to raise one issue right now, that being the issue of— He has indicated that Juror No. 4 was sleeping during his testimony.
>
> [SAUNDERS]: He was nodding off.
>
> [THE COURT]: I note that I did watch the jury myself.
>
> [PROSECUTOR]: Judge, I did not see, nor did my officer; however, I think the time to have brought this up would have been when they were striking the alternate [juror].
>
> [SAUNDERS]: I don't know that.
>
> [THE COURT]: I watched them. There were times two different people tended to nod a little, but they always got up again. I don't think they ever slept. I think they were getting tired, and I gave a break intentionally once just to make sure they were moving

167

around . . . . I am satisfied by my personal observation that they heard the testimony and observed the exhibits, so I am not granting a mistrial, if that is the motion.

¶ 16. Saunders then submitted a postconviction motion, in which he again asserted that one of the jurors was sleeping during trial. With his motion, Saunders submitted an affidavit in which he averred that he had informed trial counsel during trial about the sleeping juror.[4] He further averred that he recalled only lunch breaks during trial.

¶ 17. At a non-evidentiary hearing on Saunders' postconviction motion, Saunders requested an evidentiary hearing regarding the sleeping juror. The trial court denied the motion, elaborating on what it had said after trial:

> I do think the Court, in speaking, did not clarify enough what it saw as the factual situation. The key fact, which I did say but I should emphasize, is that I watched the jury, [and] I did not see anyone sleeping. I did say they were tired or I thought they might be tired

---

[4] We note that in his postconviction affidavit, Saunders claims that he informed trial counsel about the sleeping juror immediately after he testified at trial. This version of events could be construed as inconsistent with the trial transcript, in which Saunders' trial counsel states that Saunders asked him to raise the issue with the court *after* trial, and in which Saunders states that he did not know that he was supposed to raise the issue earlier. Despite the potential inconsistency, we are satisfied that the transcript provides the most accurate version of the facts, as it is the version that Saunders himself repeatedly relies upon in his appellate brief—stating "Saunders told the trial court right after the jurors were polled that one juror had been asleep"—and as Saunders does not submit any argument that trial counsel was ineffective for failing to bring the issue to the trial court's attention during trial.

because I said I think they were getting tired. That often happens in a jury, when somebody looks like they might be getting sleepy. That's not an unusual occurrence.

However, I do watch, and I did watch at the trial and did not see anyone sleeping, and I found that nobody was sleeping. So that finding obviates the need for any identifying of a particular juror or of having a fact-finding hearing. I've already found I watched them, they were awake. That is supported by the D.A. who did the trial saying he did not see anyone sleeping and his [c]ourt officer did not see anyone sleeping.

However, the key finding is mine, and I stand by that finding, that nobody was sleeping, so I am denying the motion.

¶ 18. Saunders now appeals.

## II. ANALYSIS.

¶ 19. On appeal, Saunders argues that at trial the prosecutor—contrary to WIS. STAT. § 971.23(8)(a)—improperly commented on the fact Paul, at whose house Saunders claimed to be during the burglary, did not testify at trial. He also argues that the trial court erred in denying him an evidentiary hearing to determine whether one of the jurors slept during trial. We discuss each argument in turn.

A.  *Saunders is not entitled to a new trial pursuant to WIS. STAT. § 971.23(8)(a) because he never filed the required notice of alibi and because the witness in question was not an alibi witness.*

¶ 20. We turn first to Saunders' argument that he is entitled to a new trial because the State commented on his decision not to call his friend Paul as a witness.

169

As noted, during cross-examination and during closing argument, the prosecutor referenced the fact that Saunders' friend Paul did not testify at trial and thus could not corroborate Saunders' version of events. Saunders argues that pursuant to WIS. STAT. § 971.23(8)(a), the prosecutor was not allowed to comment on his failure to call Paul to testify at trial. This is a statutory construction question that we review *de novo. See Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 11, 308 Wis. 2d 103, 746 N.W.2d 762.

¶ 21.   WISCONSIN STAT. § 971.23(8)(a) is Wisconsin's notice of alibi statute. While the statute does not define the term "alibi," our supreme court has defined the term as "merely a shorthand method of describing a defense based on the fact that the accused was elsewhere at the time the alleged incident took place. The word, 'alibi,' is simply the Latin word for 'elsewhere.' " *See State v. Brown*, 2003 WI App 34, ¶ 13, 260 Wis. 2d 125, 659 N.W.2d 110 (citations and one set of quotation marks omitted); *see also State v. Harp*, 2005 WI App 250, ¶ 15, 288 Wis. 2d 441, 707 N.W.2d 304.

■

¶ 22.   WISCONSIN STAT. § 971.23(8)(a) provides:

*If the defendant intends to rely upon an alibi as a defense, the defendant shall give notice to the district attorney at the arraignment or at least 30 days before trial* stating particularly the place where the defendant claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to the alibi, if known. If at the close of the [S]tate's case the defendant withdraws the alibi or *if at the close of the defendant's case the defendant does not call some or any of the alibi witnesses, the [S]tate shall not comment on the defendant's withdrawal or on the failure to call some or any of the alibi witnesses.* The

[S]tate shall not call any alibi witnesses not called by the defendant for the purpose of impeaching the defendant's credibility with regard to the alibi notice. Nothing in this section may prohibit the [S]tate from calling said alibi witnesses for any other purpose.

(Emphasis added). The purpose of § 971.23(8)(a) is "to avoid the sudden and unexpected appearance of witnesses for the first time at trial under such circumstances that it is impossible for the [S]tate to make any investigation in respect to the alibi defense or in respect to the witnesses who intend to establish that defense." *McClelland v. State*, 84 Wis. 2d 145, 151, 267 N.W.2d 843 (1978).

¶ 23. Applying the definition of "alibi" to Saunders' case and construing the statutory language to give words their ordinary meaning, as we are required to do, *see Fox v. Catholic Knights Ins. Soc'y*, 2003 WI 87, ¶ 19, 263 Wis. 2d 207, 665 N.W.2d 181, we hold that WIS. STAT. § 971.23(8)(a) does not apply to the instant case because: (1) Saunders never filed a notice of alibi; and (2) Paul could not have been an alibi witness. Thus, because the statute did not apply, the prosecutor did not err by commenting on Paul's absence at trial.

¶ 24. While Saunders argues that Paul was in fact an alibi witness, we cannot agree with his contention because—given the testimony that Paul was not home at the time Saunders was at his house—Paul would not have been able to vouch for Saunders' whereabouts during the night of the burglary. *See Brown*, 260 Wis. 2d 125, ¶ 13; *Harp*, 288 Wis. 2d 441, ¶ 15. Contrary to Saunders' assertions, the fact that he himself testified that he was elsewhere during the commission of the burglary does not mean that Paul would have done so. Indeed, the best Paul could have done would have been to corroborate Saunders' testimony that he (Paul) was

not at home during the time that Saunders allegedly went there. However, this is far different from an account that Saunders "was elsewhere at the time the alleged incident took place." *See Brown*, 260 Wis. 2d 125, ¶ 13.

¶ 25.   Moreover, while Saunders repeatedly notes that the statute imposes no requirement that *he* file a notice of alibi to testify that he was elsewhere, the issue before us is whether the prosecutor improperly commented on the absence of Paul. The statute, by its plain language, only bars a prosecutor from commenting on missing alibi witnesses whom the defendant has named in the notice of alibi. *See* Wis. Stat. § 971.23(8)(a). Our case law supports this plain-language interpretation of the statute. *See State v. Burroughs*, 117 Wis. 2d 293, 305, 344 N.W.2d 149 (1984) ("The statute does not deny the defendant the right to testify, but rather, only requires that if he is going to claim not to have been at the scene of the crime, then he must notify the state where he was."); *see also State v. Haynes*, 118 Wis. 2d 21, 28–29, 345 N.W.2d 892 (1984) (no error where trial court excluded defendant's alibi witnesses for failure to comply with Wis. Stat. § 971.23(8) when trial counsel did not advise trial court of the possible alibi witnesses until mid-trial); *State v. Selbach*, 268 Wis. 538, 540, 68 N.W.2d 37 (1955) ("The language of the [notice of alibi] statute is plain and unambiguous. Any notice given thereunder must be in writing."). Therefore, even if Saunders could have considered Paul an alibi witness and sought the protections of the notice of alibi statute, he was required to notify the State before trial. Because he did not do so, however, the prosecutor's comments were not inappropriate.

¶ 26. Finally, we note that, contrary to Saunders' argument in his reply brief, the prosecutor's comments regarding Paul did not shift the burden of proof. "A prosecutor may comment on the evidence, detail the evidence, argue from it to a conclusion, and state that the evidence convinces him or her and should convince the jurors." *State v. Adams*, 221 Wis. 2d 1, 19, 584 N.W.2d 695 (Ct. App. 1998). It follows that the prosecutor in this case could express skepticism about Saunders' uncorroborated version of events, as he did in this case.

¶ 27. Thus, because Paul was not a true alibi witness and because Saunders never filed a notice of alibi, Wis. Stat. § 971.23(8)(a) is wholly inapplicable. The prosecutor's comments were not improper.

*B. The trial court did not err in denying Saunders' postconviction motion because Saunders forfeited his right to object to the allegedly sleeping juror.*

¶ 28. We turn next to Saunders' argument that the trial court erred in denying his postconviction motion for an evidentiary hearing and/or new trial on the basis that one of the jurors was sleeping during trial. "How to proceed when faced with an assertion of jury inattentiveness is determined by the trial court's informed discretion." *State v. Hampton*, 201 Wis. 2d 662, 670, 549 N.W.2d 756 (Ct. App. 1996). In determining whether the trial court properly exercised its discretion in this matter, we look first to the trial court's "on-the-record explanation of the reasons underlying its decision." *Id.* If that explanation shows that the trial court examined the applicable facts and reasoned its

way to a conclusion that a reasonable judge could reach and is consistent with applicable law, we will affirm even if that conclusion is not one with which we ourselves agree. *Id.*

■

¶ 29.   Saunders argues that the trial court erred in finding that none of the jurors had slept because his postconviction affidavit avers that one of the jurors did sleep during trial; thus only an evidentiary hearing will reveal the truth. The State argues that, regardless of the trial court's finding that none of the jurors had slept, Saunders is not entitled to an evidentiary hearing because he forfeited his right to object by failing to bring up the issue until after trial.[5] We agree with the

---

[5] We note that the State does not specifically use the term "forfeit," but instead, argues that Saunders "waived" his right to object to the allegedly sleeping juror. As our supreme court has noted:

> [a]lthough cases sometimes use the words "forfeiture" and "waiver" interchangeably, the two words embody very different legal concepts. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right."
>
> In other words, some rights are forfeited when they are not claimed at trial; a mere failure to object constitutes a forfeiture of the right on appellate review . . . .
>
> In contrast, some rights are not lost by a counsel's or a litigant's mere failure to register an objection at trial . . . . [For example], "a criminal defendant has certain fundamental constitutional rights that may only be waived personally and expressly," including "the right to the assistance of counsel, the right to refrain from self-incrimination, and the right to have a trial by jury . . . . Such rights cannot be forfeited by mere failure to object."

*See State v. Ndina*, 2009 WI 21, ¶¶ 29–31, 315 Wis. 2d 653, 761 N.W.2d 612 (citations omitted). Because the issue before us involves juror misconduct, not a fundamental constitutional

State. *See Mercado v. GE Money Bank*, 2009 WI App 73, ¶ 2, 318 Wis. 2d 216, 768 N.W.2d 53 (we may affirm the trial court's order on different grounds than those relied on by trial court).

¶ 30. Wisconsin courts have "continuously emphasized the importance of making proper objections as a prerequisite to assert, as a matter of right, an alleged error on appeal." *See Vollmer v. Luety*, 156 Wis. 2d 1, 10, 456 N.W.2d 797 (1990). The reasons for this rule are numerous. "[R]equiring objections at trial allows the trial judge an opportunity to correct or to avoid errors, thereby resulting in efficient judicial administration and eliminating the need for an appeal." *Id.*, 156 Wis. 2d at 11. Additionally, the rule ensures that appellate courts correct errors made by the trial court instead of ruling on matters never considered by the trial court. *Id.* at 10–11. In addition, requiring parties to raise issues at the trial court level encourages diligent preparation and litigation, and discourages parties from "build[ing] in an error to ensure access to the appellate court." *See id.* at 11.

¶ 31. Many of the reasons underlying the timely objection rule justify its application to Saunders' case. Most importantly, if Saunders had notified the trial court of the allegedly sleeping juror at the time he discovered the alleged misconduct, the trial court could have immediately corrected the problem. *See id.*, 156 Wis. 2d at 10. Conversely, allowing Saunders to notify the trial court after trial about the juror would compli-

right, we conclude that "forfeiture" is the proper term to utilize in this case. *See id.*; *see also State v. Hampton*, 201 Wis. 2d 662, 669 n.3, 549 N.W.2d 756 (Ct. App. 1996) (collecting cases where defendants who failed to object to sleeping juror(s) were prohibited from arguing issue on appeal).

cate the problem, and encourage future litigants to "build in an error" for appeal. *See id.* at 10–11. Indeed:

[t]he only conclusion possible from [circumstances in which defense counsel neither moved for a mistrial nor requested substitution of an allegedly sleeping juror until after guilty verdicts were returned] is that defense counsel, fully aware of the existence of the problem . . . , deliberately chose to proceed with the original jury to create a no-lose situation: either a not guilty verdict would be returned or an arguably tainted guilty verdict would provide a basis for appeal. We strongly disapprove such a "gamesmanship approach to criminal justice."

*See United States v. Krohn,* 560 F.2d 293, 297 (7th Cir. 1977) (citation omitted); *see also State v. Huebner,* 2000 WI 59, ¶¶ 11–12 & n.2, 235 Wis. 2d 486, 611 N.W.2d 727 (" 'waiver' " or " 'forfeiture' " rule "prevents attorneys from 'sandbagging' errors," in other words, from "failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal").

■

¶ 32. We therefore conclude that any party who notices that a juror may have fallen asleep at trial must bring the issue to the trial court's attention during trial as soon as practicable after the person notices the sleeping juror. We further conclude that, because Saunders waited until after trial to bring the issue to the trial court's attention, he forfeited his right to appeal the trial court's discretionary resolution of this issue. Because Saunders forfeited his right to contest the sleeping juror, the trial court did not err in upholding the conviction or in denying Saunders' postconviction motion.

¶ 33. While Saunders correctly notes that *Hampton,* 201 Wis. 2d at 664, 673, entitles a defendant who alleges that a juror slept during trial to an evidentiary hearing to determine whether the inattention

prejudiced the defendant to the extent that he did not receive a fair trial, that case is inapposite. In *Hampton*, the defendant objected to the sleeping juror during trial, *see id.* at 666–67. Furthermore, while Saunders implies that his objection made after the jury returned its verdict and after the jury was dismissed was timely, he points to no authority for this proposition. *See State v. McMorris*, 2007 WI App 231, ¶ 30, 306 Wis. 2d 79, 742 N.W.2d 322 (we "may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record"). In fact, case law from multiple courts around the country establish that the proper time to object to an allegedly sleeping juror is when the issue first arises, thereby allowing the trial court to immediately correct the problem. *See Hampton*, 201 Wis. 2d at 669 n.3 (collecting cases from several circuits where defendants who failed to timely object to sleeping juror(s) were prohibited from arguing issue on appeal).

¶ 34. As a final matter, we are not persuaded by Saunders' argument that we should construe his objection as timely because he—as a layperson—did not know that he should have brought the sleeping juror to the trial court's attention when it actually was a problem. As we have seen, however, Saunders' affidavit says that he did tell his lawyer about the alleged sleeping juror during the trial. He does not assert that his lawyer was ineffective for not immediately bringing that to the trial court's attention. Thus, his "lay person" contention is without merit.

*By the Court.*—Judgment and order affirmed.