# COURT OF APPEALS
# DECISION
# DATED AND FILED

# March 12, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP14-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF854

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

DALQUAVIS WARD,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County: TIMOTHY D. BOYLE, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Dalquavis Ward appeals from a judgment of conviction and an order denying his postconviction motion following a hearing. Ward argues that he is entitled to a new trial based on trial counsel's allegedly ineffective assistance in failing to file a notice of alibi, failing to pursue an alibi defense, and failing to object to the trial court's instruction to the jury to disregard Ward's alibi testimony and other-acts evidence.  Ward further argues that the trial court deprived him of his constitutional right to present a defense by instructing the jury to disregard his alibi testimony.  We disagree and affirm.

## BACKGROUND

¶2      After a five-day trial, a jury found Ward guilty of first-degree intentional homicide with use of a dangerous weapon, as well as armed robbery and being a felon in possession of a firearm, both including penalty enhancements for Ward's status as a habitual offender.  The charges stemmed from an armed robbery during business hours at Teezers bar that ended with the fatal shooting of an off-duty Racine police officer, John Hetland, who had engaged with the robber in an attempt to protect Teezers' employees and customers.  For the homicide, Ward is serving a life term without the possibility of parole, consecutive to bifurcated sentences of forty-six years and fourteen years for the robbery and unlawful firearm possession, respectively.

¶3      At trial, testimony from Teezers' employees, witnesses, and law enforcement officers established the following facts surrounding the night of the robbery.  A masked man wearing a black hoodie and a black mask that covered most of his face entered through a rear door and walked behind the bar.  He walked up to the bar manager, H.F., as she worked at the cash register.  He held a gun in his right hand, pointed it at H.F., and demanded all of the money.  As H.F.

handed over the cash to the robber in his left hand, Officer Hetland, who was having dinner at Teezers, jumped over the bar and scuffled with the man, enabling H.F. and other customers to flee to safety. The scuffle ended with a single gunshot before the robber fled through the kitchen door.

¶4      The scuffle lasted approximately thirteen seconds before the robber gained separation from Hetland, who had lost his balance. Rather than flee with the cash in hand, the robber aimed and fired one shot directly into Hetland's chest from three feet away, severing his aorta and killing him almost instantly. The entire episode, from the moment the robber entered the bar to when he shot Hetland and fled through the bar's kitchen, was caught on the bar's high-definition video camera system and was viewed by investigators at the scene. Other cameras captured the robber's moves outside in the time leading up to the robbery and inside from after the robbery and homicide until the robber fled.

¶5      Ward also testified in his own defense at trial. When Ward's attorney asked where Ward was on the day of the robbery, he replied that he was at his brother Brandon's house that Brandon shared with his partner Krystal. Ward explained that after eating barbecue, he "smoked weed and just stayed there the rest of the night." Ward denied having been at Teezers on the night in question, despite the fact that DNA evidence presented at trial placed Ward at the scene. Specifically, Ward's DNA profile matched the DNA profile that the robber left on a doorknob to a "private" Teezers entrance, and matched the DNA profile that the robber left on Hetland's face, neck, and shoulder during the thirteen-second struggle.

¶6      The State objected to Ward's testimony on grounds that it constituted alibi evidence and Ward had not provided the requisite notice under

3

the notice-of-alibi statute, WIS. STAT. § 971.23(8) (2023–24).[1] Ward's attorney responded that he had only asked Ward whether he was at Teezers that night and where he awoke the next morning, but did not ask Ward where he was when the robbery occurred. The trial court sustained the objection, found that this was alibi testimony, and after considering jury instructions on the issue from the parties, instructed the jury to disregard Ward's testimony that he was at his brother's home "during the entire night of June 17, 2019." Neither Brandon nor Krystal testified at trial as to Ward's whereabouts during the time of the Teezers' incident.

¶7     After sentencing, Ward filed a postconviction motion for a new trial raising the claims presented here, with the exception that he did not advance the argument he now makes that the trial court violated his constitutional right to present a defense by disallowing the alibi testimony.[2] The court denied Ward's motion after holding a ***Machner***[3] hearing. The court found that trial counsel did not perform deficiently, and that Ward was not prejudiced by either the failure to notice or the disallowance of his alibi testimony, nor was Ward prejudiced by counsel's failure to object to the other-acts testimony. Ward appeals.

¶8     We include additional facts below as necessary to the discussion.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] We address in detail this argument and its status on appeal in the discussion below.

[3] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

## DISCUSSION

¶9 Ward's arguments on appeal fall into two main categories—those related to trial counsel's and the trial court's decisions surrounding Ward's alibi testimony and those related to the admission of, and trial counsel's failure to object to, testimony related to other acts committed by Ward that were similar to the crimes for which he was on trial.

¶10 To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that he or she suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A reviewing court need not address both prongs of the analysis if the defendant makes an insufficient showing on either one. *Id.* at 697. Our review of an ineffective assistance of counsel claim is a mixed question of fact and law. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). We will not disturb the circuit court's findings of fact unless they are clearly erroneous, but the ultimate determination of whether counsel's performance fell below the constitutional minimum is a question of law we review de novo. *Id.* at 634.

¶11 To establish ineffective assistance of counsel, Ward must make a threshold showing that, when considering all the circumstances, his counsel performed deficiently by providing representation that fell below an objective standard of reasonableness. *See State v. Jenkins*, 2014 WI 59, ¶36, 355 Wis. 2d 180, 848 N.W.2d 786. Our review is highly deferential to the reasonableness of counsel's performance, and we make every effort to reconstruct the circumstances and evaluate counsel's conduct from his or her perspective at the time of the relevant decision. *Id.* Ordinarily, a defendant does not prevail unless the defendant proves that counsel's performance sunk to the level of professional

malpractice. **State v. Maloney**, 2005 WI 74, ¶23 n.11, 281 Wis. 2d 595, 698 N.W.2d 583.

*Alibi-related issues*

¶12 A defendant who simply claims that he was not present at the scene of the crime when the crime occurred does not present an alibi defense within the meaning of the notice-of-alibi statute. *See* **State v. Starr**, 60 Wis. 2d 763, 764, 211 N.W.2d 510 (1973). However, a defendant who claims that he was elsewhere, at a place other than the scene of the crime when the crime occurred, does present such a defense. *See* **State v. Shaw**, 58 Wis. 2d 25, 30–31, 205 N.W.2d 132 (1973), *overruled on other grounds by* **State v. Poellinger**, 153 Wis. 2d 493, 451 N.W.2d 752 (1990); *see also* **State v. Harp**, 2005 WI App 250, ¶¶15, 22, 288 Wis. 2d 441, 707 N.W.2d 304.

¶13 Here, the parties agree that Ward's trial testimony that he was at his brother's residence the entire night of the armed robbery and homicide at Teezers constituted an alibi defense. The disagreement is whether Ward's trial counsel provided ineffective assistance. Ward argues that he is entitled to a new trial because his attorney was constitutionally ineffective for failing to notice Ward's potential alibi testimony, and counsel's failure to notice the defense, coupled with the trial court's decision to strike Ward's alibi testimony, deprived Ward of his constitutional right to present a defense.

¶14 WISCONSIN STAT. § 971.23(8) requires the defense to file a notice of alibi at least thirty days in advance of trial if it intends to offer any alibi evidence. Ward asserts that his trial counsel knew well before trial that Ward wanted to testify that he was at his brother's house during the Teezers' incident, so counsel should have filed the notice even if there were no other witnesses to corroborate

6

his alibi testimony. As we now explain, we conclude that the trial court correctly determined that counsel was not ineffective as it relates to the alibi defense.

¶15 First, reviewing Ward's trial testimony, we agree with the parties and are satisfied that he presented an alibi defense within the meaning of the notice-of-alibi statute. *See* WIS. STAT. § 971.23(8). The obvious purpose of the testimony was to persuade the jury that Ward was at his brother's house when the armed robbery and homicide occurred, making it impossible for him to have committed the crime. Because Ward presented an alibi defense, he was required to provide notice under the notice-of-alibi statute. Because he failed to do so, the trial court properly struck his testimony. However, although trial counsel did not file a notice of alibi or attempt to present an alibi defense, we agree with the trial court's postconviction finding that counsel's failure to notice and pursue the alibi defense did not rise to the level of ineffective assistance.

¶16 The Seventh Circuit Court of Appeals has held that the preclusion of a defendant's alibi testimony for failure to give notice under Wisconsin's notice-of-alibi statute violated the defendant's constitutional right to testify on his own behalf. ***Alicea v. Gagnon***, 675 F.2d 913, 924–25 (7th Cir. 1982). However, our supreme court later explicitly rejected this holding. In ***State v. Burroughs***, 117 Wis. 2d 293, 305–06, 344 N.W.2d 149 (1984), it explained:

> We disagree with that interpretation of Wisconsin's alibi statute. The statute does not deny the defendant the right to testify, but rather, only requires that if he is going to claim not to have been at the scene of the crime, then he must notify the state where he was. That is not a denial of a right to testify; it is only a reasonable requirement needed to achieve orderly trials and procedures....
>
> [N]either this court nor the United States Supreme Court has ever held that there cannot be reasonable limitations or conditions placed on this right. The defendant's right to testify is limited to being truthful and relevant and, if in the

form of an alibi, subject to notice pursuant to [WIS. STAT. §] 971.23(8).

¶17    We conclude that Ward has failed to establish that trial counsel was ineffective in failing to file a notice of alibi or in failing to object to the jury instruction directing the jury to disregard Ward's alibi testimony. Had counsel specifically objected on the ground that striking Ward's alibi testimony and instructing the jury to disregard it would violate Ward's rights to testify and to present a defense, the objection would have failed. "[T]rial counsel cannot be considered ineffective for failing to raise a meritless claim." *State v. Davis*, 2023 WI App 25, ¶25, 407 Wis. 2d 783, 991 N.W.2d 491.

¶18    Moreover, and critical to our decision, is the fact that trial counsel testified at the postconviction hearing that after having two separate investigators look into Ward's potential alibi defense before the trial, counsel determined that there was no good-faith basis on which he could present Ward's alibi defense. Despite Ward's urging that trial counsel present alibi evidence, counsel reported that no witnesses could account for Ward's whereabouts during the time of the Teezers' incident.

¶19    With respect to Ward's complaint that he was prejudiced by trial counsel's approach to his potential alibi defense, the trial court found that this claim was "speculative at best." The record supports that conclusion. There are two reasons why Ward's alibi testimony would not have made a difference to the outcome of his trial. First, it was extremely weak. Not only was Ward's testimony self-serving but, as noted by the court, "there was no corroborating support for it."

¶20   Second, the testimony would have been overshadowed by the strong evidence of Ward's guilt.  At trial, Ward admitted on direct-examination to being a "professional robber", and stated frankly on cross-examination that "I rob businesses."  Ward also testified to having committed four prior armed robberies of Racine businesses strikingly similar to this one, and the DNA evidence recovered at the scene and from Officer Hetland, conclusively proved that Ward had been present during the robbery and homicide.  Ward failed to explain when he testified how his DNA ended up on the doorknob that the robber grabbed behind Teezers, or how Ward's DNA got on Hetland's face, neck, and shoulder if Ward was not at the scene.  Ward's decision to testify in the face of the DNA evidence made matters worse for him.  In short, Ward's uncorroborated assertion that he was at his brother's house all night would not have held up even if counsel had objected to striking it.

¶21   We also reject Ward's next argument, that the trial court violated his constitutional right to testify on his own behalf when it struck his testimony based upon his failure to provide notice under the notice-of-alibi statute.[4]  Given our supreme court's decision in **Burroughs**, which we are obligated to follow, we cannot say that the court violated Ward's constitutional right to testify on his own behalf when it struck his testimony based upon his failure to provide notice under the notice-of-alibi statute.  The notice-of-alibi statute is a reasonable limitation that can be placed on a defendant's constitutional right to testify, and Ward plainly violated it in this case.

---

[4] The State argues that Ward forfeited the right to raise on appeal the issue that the trial court violated his constitutional rights in striking the alibi testimony by asserting only ineffective assistance of counsel as a basis for a new trial in his postconviction motion.  Given our conclusion that this argument fails on its merits, we decline to apply the forfeiture rule here.

*Other-acts testimony*

¶22   Ward next argues ineffective assistance of trial counsel based on counsel's failure to object to other-acts testimony regarding other similar armed robberies Ward had committed in the area. The allegedly-objectionable testimony was elicited during Ward's cross-examination by the prosecutor.

¶23   A defendant claiming ineffective assistance of counsel for failure to object to other-acts testimony must establish that trial counsel's decision not to object was inconsistent with a reasonable trial strategy, that is, that it was irrational or based on caprice, to establish counsel's performance was deficient. *See* ***State v. Breitzman***, 2017 WI 100, ¶75, 378 Wis. 2d 431, 904 N.W.2d 93. (affirming denial of ineffective assistance of counsel claim for failure to object to other-acts testimony because trial counsel's actions were based on a reasonable trial strategy and a jury instruction limited the risk of unfair prejudice). When the trial court "determines that counsel had a reasonable trial strategy, the strategy is virtually unassailable in an ineffective assistance of counsel analysis." ***Id.*** (internal quotation removed).

¶24   Based on our review of the record, we conclude that Ward's argument that the decision not to object to other-acts evidence was not strategic is inconsistent with the findings of the postconviction court, which Ward has not shown to be clearly erroneous. *See* ***Thiel***, 264 Wis. 2d 571, ¶21. Trial counsel provided a reasonable explanation for not objecting to the history of Ward's commission of previous, similar armed robberies. The court determined that "there was little doubt as to [trial counsel's] strategy and decisions to object or not to object to certain information." It further found that "in view of all the evidence, such decisions were reasonable and were done to actually deflect or not highlight

any prejudice." Finally, the court found that "there is no reasonable probability that additional objections by [trial counsel] would [have made] the outcome of the trial any different." We agree with the trial court's analysis.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.