FITZPATRICK, J.
¶1 Natalie Murphy was convicted at a jury trial of first-degree reckless homicide and second-degree recklessly endangering safety in the Juneau County Circuit Court. Murphy appeals her conviction, arguing that the circuit court erroneously exercised its discretion in making two evidentiary rulings. First, she contends that the circuit court erroneously exercised its discretion in excluding the testimony of her firearms expert. Second, Murphy argues that the circuit court erroneously exercised its discretion in not excluding the expert testimony of one of the State's rebuttal witnesses.
¶2 We conclude that the circuit court properly exercised its discretion in excluding the testimony of Murphy's proffered firearms expert. We also conclude that the circuit court properly exercised its discretion in overruling Murphy's objection to the first question posed to the State's expert on rebuttal, and that Murphy forfeited her opportunity to challenge on appeal the answer to the second question posed to the expert on rebuttal because she did not object to that particular question at the time it was posed. Accordingly, we affirm the rulings of the circuit court.
BACKGROUND
¶3 In 2015, Juneau County Sheriff's Office deputies were dispatched to the residence of Natalie Murphy and Andrew Dammen. Murphy and Dammen had an on-again, off-again relationship and one child together. When law enforcement officers arrived at the residence, Murphy (who made the emergency call) was crying hysterically and Dammen was unresponsive. A deputy attempted to render first aid to Dammen, but Dammen died shortly thereafter.
¶4 Murphy told the officers multiple times that she had shot Dammen. Murphy also stated to the officers that Dammen told her to shoot him. At the scene, officers detected the smell of intoxicants on Murphy's breath. Testing later showed that Murphy's blood alcohol concentration near the time of the shooting was .145.
¶5 An autopsy, performed by Dr. Michael Stier, revealed that Dammen died from a gunshot wound. The State charged Murphy with first-degree intentional homicide and first-degree recklessly endangering the safety of their infant child who was in the room at the time of the shooting.
¶6 Before trial, Murphy retained Steven Howard as an expert on firearms. Howard's opinions concerned Murphy's factual assertion that, on the night of the shooting, Dammen thrust a gun into her hand and the gun discharged accidentally while Dammen was holding the gun barrel. Howard prepared a report which contained two areas of opinion pertinent to this appeal. The first topic concerned Howard's attempt to reenact the events at the time of the shooting which, in turn, led to Howard's opinion regarding why no soot or injuries were found on Dammen's hands and arms. The second topic related to Howard's opinion that Glock 23 pistols, the type of firearm involved in the shooting here, "are notorious for accidental/unintended discharges."
¶7 The State filed a motion to exclude Howard's testimony, on both areas mentioned, because Howard's opinions did not meet the requirements of WIS. STAT. § 907.02(1) (2015-16).[1] Following an evidentiary hearing at which Howard testified, the circuit court granted the State's motion and precluded all of Howard's proposed trial testimony.
¶8 At trial, the State called Dr. Stier in its case-in-chief to testify about, among other subjects, how the cartridges generally discharge from the Glock 23 pistol, and that there were no injuries to Dammen's arms or hands that would have been evident if a firearm had been discharged near his arms or hands.
¶9 Murphy chose to testify in support of her factual assertion that Dammen thrust the Glock 23 pistol into her hand and the gun discharged accidentally. In its rebuttal case, the State called Dr. Stier again as a witness to rebut that assertion.
¶10 During rebuttal, the State asked two questions of Dr. Stier germane to this appeal. The first was the following: "Dr. Stier, do you believe that the injuries you observed on Andrew Dammen's body could have resulted from a [Glock 23, .40 caliber pistol] being handed from Andrew Dammen to another person and during that hand-off the pistol discharging?" Murphy objected to the question on the ground that Dr. Stier was not qualified to render an opinion on that subject, and the circuit court overruled the objection.
¶11 The State's other pertinent rebuttal question to Dr. Stier was the following:
[I]f a Glock 23 was being handed from one person to another and ... it was discharged in some way, what injuries would you expect to see that you didn't see?
Murphy did not object to the second question.
¶12 Murphy was convicted of first-degree reckless homicide and second-degree recklessly endangering safety. Murphy now appeals.
¶13 We will mention other material facts as pertinent to particular arguments in the Discussion that follows.
DISCUSSION
¶14 On appeal, Murphy challenges two of the circuit court's evidentiary rulings. First, she contends that the circuit court erroneously exercised its discretion in excluding Howard's testimony. We conclude that the circuit court properly exercised its discretion in prohibiting Howard's testimony. Second, Murphy asserts that the circuit court erroneously exercised its discretion in not excluding Dr. Stier's rebuttal testimony. We conclude that the circuit court properly exercised its discretion in overruling Murphy's objection to the State's first question to Dr. Stier on rebuttal. We also conclude that, because Murphy did not object to the State's second question put to Dr. Stier on rebuttal, she forfeited her opportunity to challenge on appeal that portion of Dr. Stier's testimony.[2]
I. The Circuit Court Properly Exercised Its Discretion in Excluding Howard's Testimony.
¶15 We address, first, whether the circuit court erroneously exercised its discretion in excluding the testimony of Murphy's proposed firearms expert, Steven Howard.
A. Standard of Review.
¶16 In reviewing the circuit court's decision on the admissibility of proposed expert testimony, we first determine if the circuit court "applied the proper legal standard under WIS. STAT. § 907.02(1)." Seifert v. Balink , 2017 WI 2, ¶¶89, 218, 372 Wis. 2d 525, 888 N.W.2d 816. We review this issue de novo. Id. It is not disputed that the circuit court explicitly considered the necessary portions of § 907.02(1) in its analysis, nor is it disputed that this is the correct legal standard.
¶17 Because the circuit court used the correct legal standard, our review on this issue "is limited to reviewing whether the circuit court erroneously exercised its discretion." See id. , ¶¶96, 218. Specifically, we review "whether the circuit court properly exercised its discretion in determining which factors should be considered in assessing reliability, and in applying the reliability standard to determine whether to admit or exclude" the evidence pursuant to WIS. STAT. § 907.02(1). Id. , ¶¶90, 218.
B. Applicable Standards.
¶18 The admissibility of expert testimony is governed by WIS. STAT. § 907.02. See id. , ¶50. Section 907.02(1) reads:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.
This rule of evidence has five separate tests, each of which must be satisfied for the expert testimony to be admissible: (1) the testimony must assist the trier of fact to understand the evidence or determine a fact in issue; (2) the witness must be qualified as an expert based on his or her knowledge, skill, experience, or education; (3) the testimony must be based on sufficient facts or data; (4) the testimony must be the product of reliable principles and methods; and (5) the witness must apply those principles and methods reliably to the facts of the case. See State v. Giese , 2014 WI App 92, ¶17, 356 Wis. 2d 796, 854 N.W.2d 687. The proponent of the evidence, here Murphy, has the burden to show by a preponderance of the evidence that the testimony is admissible. See Seifert , 372 Wis. 2d 525, ¶58 (citing WIS. STAT. § 901.04 ).
¶19 Under WIS. STAT. § 907.02(1), the circuit court performs a gatekeeping function to ensure that the expert's opinion is based on a reliable foundation and is relevant to the material issues. Giese , 356 Wis. 2d 796, ¶18. "The standard is flexible but has teeth. The goal is to prevent the jury from hearing conjecture dressed up in the guise of expert opinion." Id. , ¶19.
¶20 The circuit court may consider a broad range of factors when determining reliability. See Seifert , 372 Wis. 2d 525, ¶¶63-64, 236. These considerations vary by case given the variety of scenarios in which expert testimony arises. Id. , ¶64, 236.
C. Analysis.
¶21 In his written report, and in his testimony at the evidentiary hearing, Howard expressed opinions on two topics. The first concerned Howard's account of how he attempted to reenact aspects of the shooting as he understood it occurred from speaking with Murphy. Howard testified that, several times, he thrust a Glock 23 pistol from his right hand to his left hand, then used his left hand to fire the pistol near his body, while holding onto the barrel of the gun with his right hand. Howard reported that, when he did this, he observed no injuries to, or powder burns or soot on, his right hand or arm after the reenactments. According to Howard, his reenactments supported the factual assertion told to him by Murphy that the gun accidentally discharged while Dammen was holding the barrel. Specifically, Howard opined that, because he did not have soot or powder burns on, or other injuries to, his right hand or arm after his reenactments, that is consistent with no evidence of soot or powder burns on, or other injuries to, Dammen's right hand and arm even though, according to Murphy, Dammen was holding the barrel of the gun at the time of the shooting.
¶22 Howard's second proposed topic for trial testimony concerned the purported reason the Glock 23 pistol discharged while held by Murphy and pointed at Dammen; that is, Howard's opinion that the Glock 23 pistol is "notorious for accidental/unintended discharges."
¶23 The circuit court excluded from testimony at trial both areas of Howard's opinions because those opinions did not satisfy the requirements of WIS. STAT. § 907.02(1). We consider each area of opinion in turn.
1. The Attempted Reenactments and Howard's Resulting Opinions.
¶24 As summarized above, Howard opined that the version of events about the shooting told to him by Murphy during an interview was consistent with the results of his purported reenactments of certain aspects of the shooting and his observations of his soot-free, uninjured right hand and arm following the reenactments. The circuit court's decision to exclude that opinion analyzed pertinent deficits in Howard's qualifications, the insufficiency of facts or data upon which Howard based his opinion, and inadequate principles and methods used by Howard. However, we need not review each aspect of the circuit court's comprehensive analysis of the admissibility of this particular opinion from Howard because, as noted, each of the five tests in WIS. STAT. § 907.02(1) must be satisfied for the expert testimony to be admissible. See § 907.02(1) and Giese , 356 Wis. 2d 796, ¶17. For that reason, we discuss only the circuit court's decision that Howard's opinion was not supported by sufficient facts or data. See § 907.02(1).
¶25 The circuit court found that Howard's written report, and materials from the defense, conceded that Howard's interview of Murphy was the source of the factual support for Howard's attempted reenactments, and Murphy does not dispute this finding. The circuit court then determined that, because the court was not informed what Murphy told Howard, she failed to meet her burden to show that there were sufficient facts or data to support Howard's opinion. Murphy argues that was an erroneous exercise of the court's discretion. We disagree.
¶26 For context, we pause to note that Murphy's memory of the shooting was an open question before the trial. It was Murphy's position that, because of the trauma of the event, she did not remember, for a "very long time," what happened at the time of the shooting. A psychologist testified at the evidentiary hearing regarding the State's motion to exclude Howard's proposed expert testimony. The psychologist was retained by Murphy and gave the opinion that Murphy had "dissociative amnesia" regarding parts of the night of the incident. The psychologist testified that he successfully used a technique known as Eye Movement Desensitization and Reprocessing to assist Murphy to remember what happened that night. However, the psychologist did not testify regarding what Murphy claimed she remembered during or after the treatment.
¶27 With that background, we now consider the circuit court's decision. The information Murphy gave to Howard during the interview, the purported factual support for Howard's opinion, was not presented to the circuit court, and the circuit court found that to be a roadblock to admitting Howard's opinion. Specifically, no affidavit, transcript, summary of the interview, or recitation of Murphy's anticipated testimony was presented to the circuit court. The circuit court determined that the dearth of information regarding what Murphy told Howard was dispositive because, without that information, there was no showing of "sufficient facts or data" to support Howard's opinions as required under WIS. STAT. § 907.02(1). The court stated:
Since the Court is required under 907.02 to evaluate whether the expert's opinions are based on sufficient facts or data, and as part of the gatekeeper function of the Court, the Court cannot perform its gatekeeper function if the facts or data upon which the expert bases his opinion are not available for the Court to review.
The court held: "The burden of providing this information is on the defense, and [Murphy] failed to meet that burden." The circuit court also stated that this, alone, was reason enough to exclude Howard's opinion.
¶28 In challenging the circuit court's ruling, Murphy first argues that the circuit court "acknowledged that it was clear that Mr. Howard's presumptions in conducting his investigation, and reconstruction, were supplied by Ms. Murphy." That generalized statement misses the mark. Murphy fails to engage with the circuit court's reasoning and never says in any meaningful way why the circuit court was incorrect in concluding that there was a failure to produce sufficient facts to support this opinion from Howard.
¶29 Murphy also argues that, if we accept the circuit court's reasoning, "it would put defendants in criminal cases involving factual disputes in a position in which no expert could take the defendant's recitation of factual background into account." We do not fully understand this argument, and Murphy cites no authority for her proposition. At any rate, our holding will not cause the problem suggested by Murphy. Experts for the defense in criminal cases can, in expressing their opinions, take into account information given to the expert by a defendant. But, because WIS. STAT. § 907.02(1) requires that the expert's opinions be based on sufficient facts or data, the defense may be required to disclose the information given to the expert, including all pertinent information shared by the defendant, which forms a basis for the expert's opinion if the State challenges the factual basis for the opinion. This unremarkable conclusion, required by § 907.02(1), is not a basis to overturn the circuit court's exercise of discretion.
¶30 To repeat, the circuit court gave multiple grounds for its ruling, but we affirm because the court was not required to accept Murphy's silence about the factual basis for Howard's reenactments and his resulting opinions. The circuit court expressed reasonable concerns that there were insufficient facts to support Howard's opinion. Therefore, we conclude that it was not an erroneous exercise of discretion for the circuit court to rule that Murphy failed to meet her burden to show that Howard's purported reenactments and his resulting opinions were admissible.
2. Reason for the Accidental Discharge.
¶31 We now discuss a separate opinion from Howard that the circuit court also excluded.
¶32 Howard opined that it was reasonable to conclude that the Glock 23 pistol discharged accidentally and caused Dammen's death because the Glock pistol is "notorious for accidental/unintended discharges." He stated in his report: "They are, in this author's opinion, the most unsafe firearm ever invented," and "[s]omewhere between 7 to 8 out of every 10 accidental discharges this author investigates involve a Glock." The circuit court did not explicitly address this opinion in Howard's report and testimony, but the parties do not dispute that the court's ruling excluded that opinion. If the circuit court fails to "adequately set forth its reasoning in reaching a discretionary decision, we will search the record for reasons to sustain that decision." State v. Manuel , 2005 WI 75, ¶24, 281 Wis. 2d 554, 697 N.W.2d 811. We now consider the arguments of the parties and conclude that there is an adequate basis in the record to affirm the circuit court's decision to exclude Howard's opinion about the relative safety of Glock pistols.
¶33 The State contends that Howard's opinion about the safety of Glock pistols does not meet the requirements of WIS. STAT. § 907.02(1) because Howard had insufficient facts or data to support this opinion.[3] First, the State asserts that Howard failed to consider another possible explanation for his perception that Glock pistols are less safe than other firearms because he has been referred a large number of accidental shooting cases involving Glock pistols. The other explanation would be that proportionally more Glock pistols are in general use than other types of guns. According to the State's argument, there may still be a lower accident rate for Glock pistols as compared to other pistols but, because Howard has focused primarily on Glock pistol accidental discharges that he investigates, he lacks accurate information about the relative safety of the Glock pistol.
¶34 Second, the State contends that Howard failed to provide his sample size; that is, how many accidental firearm discharges he has investigated. Without this information, it is impossible to determine if his cases are a representative sample of all accidental gun discharges so as to make the data reliable.
¶35 Third, the State argues that some of Howard's opinions on this topic directly collide with other opinions he expressed on this topic. He stated in his report that the Glock pistol can be dropped from an airplane, land on concrete, "and it still won't go off." In a similar vein, Howard stated in his report that the Glock "discharges like any other gun with the safety off." The State asserts Howard failed to reconcile those opinions with his opinion that the Glock is unsafe as compared to other firearms.
¶36 In response, Murphy ignores the State's reasoning and does not counter the State's contentions in any meaningful way. Murphy argues, first and obliquely, that Howard had sufficient facts or data to give an opinion about the dangerous aspects of a Glock pistol because he knew the make of the pistol and, second, the reasons given by the State to exclude this opinion are bases for cross-examination, not grounds to exclude the opinion altogether. We reject each argument.
¶37 We agree with the State that there was not a sufficient factual basis to support Howard's opinion regarding the safety of the Glock pistol. Even accepting Howard's assertion that a high percentage of accidental discharges he investigates concern Glock firearms, that does not reasonably support his conclusion about the relative safety of Glock firearms. While he asserted that seven to eight out of every ten accidental discharges that he has investigated involved a Glock pistol, he did not explain what sample size this represented, and a small sample size is generally unreliable. Also, there is no information about the number of Glock pistols sold as compared to other brands of pistols so as to allow a comparison of the absolute number of accidental discharges to a relative percentage of accidental discharges by brand. Without at least that information, Howard's opinion is conjecture because of insufficient facts or data.
¶38 Moreover, as the State points out, Howard's own statements about Glock pistols, especially his remark that the Glock "discharges like any other gun with the safety off," severely undercut his conclusion about the relative safety of Glock firearms and supports the circuit court's conclusion to exclude this opinion from testimony.
¶39 It is true as Murphy contends that, instead of exclusion, the more usual means of "attacking 'shaky but admissible' experience-based medical expert testimony is by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof....' " Seifert , 372 Wis. 2d 525, ¶86 (quoting Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579, 596 ). But for the reasons we have explained, the circuit court had a reasonable basis on which to find that Howard's opinion on the dangerousness of the Glock pistol is nothing more than "conjecture dressed up in the guise of expert opinion." See Giese , 356 Wis. 2d 796, ¶19.
¶40 In sum, we agree with the circuit court's determination that Murphy did not meet her burden to prove that Howard's testimony satisfies the requirements of WIS. STAT. § 907.02. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion in excluding Howard's testimony.
¶41 We now consider Murphy's contention that the circuit court erred in allowing rebuttal testimony from one of the State's expert witnesses.
II. The Circuit Court Did Not Erroneously Exercise Its Discretion In Allowing Dr. Stier's Rebuttal Testimony.
¶42 Murphy next argues that the circuit court erred in allowing Dr. Stier's rebuttal testimony. As we have summarized, two questions were put to Dr. Stier on rebuttal. Murphy objected to the first question, and we conclude that the circuit court did not erroneously exercise its discretion in overruling that objection. Murphy did not object to the second question put to Dr. Stier on rebuttal and, for that reason, we conclude that Murphy did not preserve that issue for appeal.
A. First Question.
¶43 Murphy testified at trial in support of her factual assertion that Dammen thrust a Glock 23 pistol into her hand and the gun discharged accidentally while Dammen was holding the gun barrel. The State sought to undermine that assertion by pointing out on rebuttal that Dammen lacked soot on, or physical injury (including powder burns) to, Dammen's hands or arms. The State contended that those would be present if Dammen was holding the barrel of the pistol at the time he was shot.
¶44 The following exchange occurred concerning the first question put to Dr. Stier by the State on rebuttal:
[STATE]: Dr. Stier, do you believe that the injuries you observed on Andrew Dammen's body could have resulted from a pistol being handed from Andrew Dammen to another person and during that hand-off the pistol discharging?
[DEFENSE COUNSEL]: I'm going to object. Relevance of this outside of the scope of his job description for purposes of what he did here , and ... it's an expert ... opinion that is not qualified by this Court to give .
THE COURT: Overruled. Go ahead, Doctor.
DR. STIER: So to restate the question, you're asking me if the lethal wound on Andrew Dammen could have been sustained from him handing the pistol to someone else. Well, there are a lot of different pistols. I think I would have to answer that question in the context of a specific model .
[STATE]: Glock 23 pistol. Glock 23, .40 caliber .
(Emphasis added.)
¶45 Dr. Stier answered that it was "almost to the point" of being "impossible" that the injuries he observed on Dammen's body could have resulted from an accidental discharge as Dammen handed the Glock 23, .40 caliber pistol to Murphy "because of the nature of what happens at the discharge of a cartridge from a Glock 23."
1. Objection.
¶46 We begin by considering the State's argument that Murphy failed to make a timely objection to the first rebuttal question to Dr. Stier. The question, as first set out by the State, referred only to "a pistol." An objection was made by Murphy and overruled by the circuit court. But, before answering the question, Dr. Stier asked for clarification of the question as to "a specific model" of pistol. In response to Dr. Stier's request, the State did not re-state the question and, instead, clarified that the same question concerned a "Glock 23, .40 caliber" pistol.
¶47 The State argues that, with the clarification, the State asked an entirely different question of Dr. Stier, and the objection made by Murphy was no longer applicable. To preserve a timely and effective objection, the State asserts, Murphy was required to again state an objection to what the State contends was a new question. We reject the State's position.
¶48 The only reasonable view of the exchange quoted above is that a new and different question was not posed to Dr. Stier when the State specified that the first question was asking not about a generic "pistol," but a specific type of pistol. Indeed, the phrase from the State which clarified the type of pistol, "Glock 23, .40 caliber," was not a new question but a declaration which can only be read as clarifying the question which was still pending. We conclude that this specific circumstance did not require Murphy to re-state her objection in order to preserve the objection to the first question to Dr. Stier.
¶49 We now determine the scope of Murphy's objection related above. Murphy's objection to the first rebuttal question to Dr. Stier was stated as follows: "outside of the scope of his job description for purposes of what he did here" and "it's an expert ... opinion that is not qualified by this Court to give."[4] We construe that language as, in effect, one objection; that is, an objection to the qualifications of Dr. Stier to give expert testimony in response to the question asked of him. Murphy does not contend that the objection states any more than we have described, and we analyze the objection in that manner.
2. Circuit Court's Ruling.
¶50 Before the jury, the circuit court overruled that objection without elaboration. At the next opportunity outside the presence of the jury, the circuit court stated:
THE COURT: I just want to make a little bit of a record on the objection that was made when Dr. Stier was ... on the stand.
I anticipated what actually happened, which was essentially Dr. Stier gave the same testimony he had given before about ... all the gas and the propellants that are burned or half burned or partially burned, and the lead, and now he did talk about the slide going back and forth. But ... having had him testify to most all of that the day before, it seemed to me that I could not sustain an objection that it was irrelevant or that it was something that he did not have the expertise to opine about.
Because the circuit court considered Dr. Stier's testimony on a previous day as part of its ruling on Murphy's objection to the first rebuttal question, it is necessary to briefly consider the pertinent portions of Dr. Stier's testimony during the State's case-in-chief.
¶51 During the State's case-in-chief, Dr. Stier testified to the following regarding his background. He is a medical doctor, a Professor at the University of Wisconsin Medical School, and a Wisconsin-licensed pathologist. Dr. Stier performs autopsies exclusively in his practice, almost all of which are forensic autopsies. At the time of the trial, he had been performing autopsies for about twenty years. During that time, he performed, on average, 200 autopsies per year, and about five to nine percent of his autopsies involved homicides. Dr. Stier is familiar with guns because firearms are one of his hobbies. He had with him in court a bullet and cartridge of the type used with the Glock 23, .40 caliber pistol for use during his testimony.
¶52 Dr. Stier gave opinions, without objection from Murphy, on the following subject matters in the State's case-in-chief.
• The types of wounds caused by firearms and the manner in which the wounds are caused by firearms.
• The type of bullet and cartridge for the Glock 23 pistol used to kill Dammen, and how the bullet and cartridge are discharged from that pistol.
• The injuries to Dammen and how those wounds relate to: the distance of the firearm from Dammen when it discharged; the length of the barrel of the gun; and types of powder and how those powders burn.
• There were no injuries to Dammen's arms, forearms, or hands, as there would have been if a firearm had discharged near a hand and forearm.
3. Analysis.
¶53 Murphy argues, first, that the circuit court's analysis of her objection was flawed because, contrary to the circuit court's determination, the question asked for opinions from Dr. Stier which were different in nature and extent than his opinions expressed during the State's case-in-chief. We disagree.
¶54 To repeat, the first question put to Dr. Stier on rebuttal concerned how the discharge of a Glock 23 pistol related to any injuries he observed on Dammen. As we have just summarized, the opinions stated earlier in the trial by Dr. Stier concerned the same subject matter; namely, what happens during the discharge of a Glock 23 pistol, and how did that relate to the physical condition of Dammen's body? Those opinions were not, as Murphy argues, different in nature and extent from the opinions requested of Dr. Stier through the first rebuttal question. So, we conclude that it was not an erroneous exercise of the circuit court's discretion for the court to consider the scope of Dr. Stier's previous testimony in overruling Murphy's objection to the first rebuttal question.
¶55 Next, Murphy argues that the circuit court erroneously exercised its discretion in overruling her objection because Dr. Stier is only a forensic pathologist and, for that reason, Dr. Stier was not qualified to give an expert opinion in answer to the question. We also reject this argument.
¶56 The circuit court correctly rejected Murphy's attempts to minimize Dr. Stier's qualifications to answer this question. We have already discussed Dr. Stier's areas of expertise, the bases for his opinions, and the circuit court's ruling. It is sufficient to note that, because of his medical knowledge, his expertise regarding the discharge of firearms (including the Glock 23 pistol), his expertise regarding injuries from firearms, and his autopsy of Dammen, the circuit court could reasonably conclude that Dr. Stier had the required expertise, and a sufficient basis for the opinions, asked for in the question.
¶57 Therefore, we conclude that the circuit court did not erroneously exercise its discretion in overruling Murphy's objection to the first question to Dr. Stier during his rebuttal testimony.
B. Second Question.
¶58 After Dr. Stier answered the first question on rebuttal, the State then asked him a second question:
So ... if a Glock 23 was being handed from one person to another and it ... was discharged in some way, what injuries would you expect to see that you didn't see?
¶59 In response, Dr. Stier described how the Glock 23 pistol ejects a spent bullet casing in a "controlled explosion," and he would expect to see soot, unburned powder, partially burned powder, and additional injuries visible on a hand holding the gun barrel when the pistol discharged.
¶60 Murphy argues that she objected to this second question put to Dr. Stier. We reject Murphy's argument because Murphy forfeited her right to challenge on appeal the admission of that testimony.
1. Standard of Review and Applicable Authorities.
¶61 "It is a fundamental principle of appellate review that issues must be preserved at the circuit court." State v. Huebner , 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. The party raising the issue on appeal has the burden of demonstrating that the issue was adequately raised before the circuit court. Id. We review de novo whether an objection to evidence adequately preserved the issue for appeal. State v. Kutz , 2003 WI App 205, ¶27, 267 Wis. 2d 531, 671 N.W.2d 660.
¶62 "[A] specific, contemporaneous objection is required to preserve error." State v. Delgado , 2002 WI App 38, ¶12, 250 Wis. 2d 689, 641 N.W.2d 490. The rules of evidence require that an objection be made "as soon as the opponent might reasonably be aware of the objectionable nature of the testimony." Holmes v. State , 76 Wis. 2d 259, 272, 251 N.W.2d 56 (1977) ; see also WIS. STAT. § 901.03(1)(a).
¶63 "Failure to object results in a [forfeiture][5] of any contest to that evidence." Holmes , 76 Wis. 2d at 272. The forfeiture rule serves several important objectives, such as allowing the circuit court to address the error and alleviate the need for appeal; giving each party notice of the issue; and preventing attorneys from failing to object to an error for strategic reasons and later claiming the error is a ground for reversal. Huebner , 235 Wis. 2d 486, ¶12. "For all of these reasons, the [forfeiture] rule is essential to the efficient and fair conduct of our adversary system of justice." Id.
2. Analysis.
¶64 The first question to Dr. Stier on rebuttal concerned the injuries to Dammen that he actually observed. The second question did not concern the injuries Dr. Stier observed on Dammen but, instead, asked Dr. Stier about the types of injuries he would "expect to see" on Dammen if a Glock 23 pistol discharged while he handed it to Murphy. Murphy argues that her objection to the first question put to Dr. Stier on rebuttal stood as an objection to the second rebuttal question because that objection "clearly alerted" the circuit court to her "concern that the State's inquiry" was outside Dr. Stier's area of expertise. We are not persuaded.
¶65 "A witness's ability to testify about a matter, whether a non-expert observation or an expert opinion, is decided question-by-question." Estate of Kriefall v. Sizzler USA Franchise, Inc. , 2011 WI App 101, ¶40, 335 Wis. 2d 151, 801 N.W.2d 781, aff'd , 2012 WI 70, 342 Wis. 2d 29, 816 N.W.2d 853. That Murphy objected to the first rebuttal question on one topic did not satisfy the requirement to make a specific, contemporaneous objection in order to allow the circuit court to decide question-by-question whether Dr. Stier had the necessary expertise to answer the second rebuttal question on a different topic. Murphy was required to notify the circuit court of her objection to the second question to preserve her opportunity to challenge the answer on appeal.
¶66 Accordingly, because Murphy did not make an objection, we conclude that Murphy forfeited her right to challenge on appeal the testimony in answer to the State's second question to Dr. Stier on rebuttal.
CONCLUSION
¶67 For the foregoing reasons, the evidentiary rulings of the circuit court are affirmed.
By the Court. -Judgment affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Both parties also make arguments regarding harmless error. Because we conclude that the circuit court properly exercised its discretion, we need not reach the harmless error analysis.

We note that the State does not directly challenge Howard's contention that a large percentage of the accidental gun discharges that Howard has investigated involve a Glock firearm.

Although Murphy also objected based on relevance, she does not pursue that argument on appeal.

In this context, the correct term is "forfeiture" rather than "waiver." See State v. Ndina , 2009 WI 21, ¶¶29-31, 315 Wis. 2d 653, 761 N.W.2d 612 ; see also State v. Saunders , 2011 WI App 156, ¶29 n.5, 338 Wis. 2d 160, 807 N.W.2d 679.