# COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1944-CR**

Cir. Ct. No. **2020CM26**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

REBECCA LEA KAMM,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Grant County: ROBERT P. VAN DE HEY and CRAIG R. DAY, Judges. *Affirmed*.

¶1 NASHOLD, J.[1] Rebecca Kamm appeals her conviction for misdemeanor retail theft and an order denying her motion for postconviction

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

relief.[2]  Specifically, Kamm argues that she is entitled to a new trial because video footage that was used at trial was not disclosed to Kamm within a reasonable time before trial, in violation of WIS. STAT. § 971.23(1).  I conclude that Kamm has forfeited this issue and therefore affirm.

## BACKGROUND

¶2      Kamm was charged with misdemeanor retail theft by intentionally taking merchandise valued at not more than $500.  The complaint alleged that Kamm took a jacket valued at $269 from Farm and Fleet without paying for it.  More specifically, the complaint alleged that a loss prevention manager for Farm and Fleet reviewed surveillance footage after a store employee found an empty box for a Milwaukee brand heated jacket in a fitting room, that the footage showed Kamm entering the fitting room with a box for the jacket in her cart and later leaving the fitting room without the box in her cart, and that when she exited the store, her purse appeared to be "extremely full."

¶3      Kamm was charged in January 2020.  In February 2020, Kamm's counsel filed a demand for discovery, and the next day, the State provided discovery with a cover letter stating that the discovery materials included 23 pages and 1 disk.  In September 2021, Kamm's initial counsel withdrew from representation, and in February 2023, Kamm was appointed new counsel, who once again filed a discovery demand.  The State did not respond to this demand because it had already provided discovery in response to the earlier demand from

---

[2] The Honorable Robert P. Van De Hey presided over the trial and entered the judgment of conviction.  The Honorable Craig R. Day entered the order denying the defendant's postconviction motion.

Kamm's initial counsel, who worked in the same Public Defender's office as Kamm's new counsel.

¶4    At an April 2023 pretrial conference held on the morning of the jury trial, Kamm's counsel raised what he referred to as a "preliminary issue":

> [KAMM'S COUNSEL]: I've been going through the discovery - you know, and [the prosecutor] can certainly attest to this - but one of the potential witnesses on the State's witness list, I'm assuming that he -- his testimony is based on some footage. I'm not sure if the State intends to admit that footage into the record, but if they do, the defense never received that footage, and so I just wanted to make the Court aware of that situation.
>
> [THE PROSECUTOR]: We turned over discovery.
>
> [KAMM'S COUNSEL]: That's correct. We got discovery pages 1 through 18 and then various photographs but never the actual footage.
>
> THE COURT: Yeah, and the footage is described in the complaint anyway and the other information, right, as far as what it shows?
>
> [THE PROSECUTOR]: Right.
>
> THE COURT: But --
>
> [KAMM'S COUNSEL]: Right, but just [in] anticipation of that witness, if there is no video, I don't know if that video could be admitted without being shown to the witness.
>
> THE COURT: Right. You would have the right to look at it. How long is it? If you want to look at it, we can probably arrange that before we bring the jury up.
>
> [THE PROSECUTOR]: Yeah. There is like seven or eight clips, and each one is probably on the average 30 seconds, I'd say, on the average. The longest one -- there is two longer ones. They are each about two minutes. The others would be measured in seconds.
>
> THE COURT: So is -- I don't know if you got it or not. It sounds like the State intended to send it or sent it

3

and it's somewhere, but you do have a right to see it. So if you want to review it, we can do that and delay bringing the jury up.

[KAMM'S COUNSEL]: I just don't know if this video, after seeing the footage, if it will affect the case and the way it will move forward.

THE COURT: All right. We'll --

[THE PROSECUTOR]: The only thing I would say - and it's only for future reference - I mean when attorneys know that there is video footage because it's referenced in the report, they should give me a call and say, "Hey, where is the video footage?" And then I would say … "Hey, get that over to the defense attorney right away so we can be all ready to go on the same page."

THE COURT: And if he watches it from start to finish, how long will that take?

[THE PROSECUTOR]: Shouldn't take more than five minutes.

THE COURT: Okay. All right. When you are finished, come back in.

¶5 After the recess to allow defense counsel to review the video footage, the circuit court asked counsel, "[H]ave you had a chance to look at the video now?" Counsel responded, "We have, Your Honor." The court then asked, "Are you ready to bring the jury up?" Counsel responded, "Yes."

¶6 At trial, the prosecutor presented testimony from the Farm and Fleet employee who found the empty box for the jacket in the fitting room, from the Farm and Fleet loss prevention manager who reviewed the surveillance footage, and from a police officer. The prosecutor also presented the video footage referenced above, which showed Kamm enter the store, pick out the jacket, enter

4

the fitting room area with the jacket box in her cart, leave the fitting room area without the jacket box in her cart, and exit the store with a very full purse.[3]

¶7 Kamm testified on her own behalf. She testified that she originally put the jacket in her cart because she intended to purchase it, but that she removed it from her cart in the fitting room area after deciding that she was not going to purchase it.

¶8 The jury found Kamm guilty. Kamm moved for postconviction relief, arguing, as relevant here, that she is entitled to a new trial because the video footage that the prosecutor presented at trial was not disclosed to Kamm within a reasonable time before trial, in violation of WIS. STAT. § 971.23(1). *See* § 971.23(1) ("Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph [various enumerated discovery materials], if it is within the possession, custody or control of the state[.]"). The circuit court denied Kamm's motion.

**DISCUSSION**

¶9 On appeal, Kamm renews her postconviction argument. In response, the State argues, among other things, that Kamm forfeited her argument because Kamm's counsel—after reviewing the video footage—stated that counsel was ready to proceed to trial. I agree and affirm on that basis. *See State v. Blalock*,

---

[3] As stated, the complaint alleges that the video footage shows Kamm entering a "fitting room." However, at trial the Farm and Fleet loss prevention manager clarified that the video footage in fact shows Kamm entering a fitting room area, in which the individual fitting rooms are located.

5

150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground ….").

¶10    "The necessity of lodging an adequate objection to preserve an issue for appeal cannot be overstated." *State v. Agnello*, 226 Wis. 2d 164, 172, 593 N.W.2d 427 (1999). "It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not … generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. This rule—"the forfeiture rule"[4]—applies to arguments raised for the first time in postconviction proceedings when the arguments could have been addressed before or during trial. *See id.*, ¶26 (concluding that the defendant forfeited his objection to being tried by a six-person jury by failing to raise it at or before trial); *id.*, ¶83 (Abrahamson, C.J., dissenting) (noting that "the defendant did raise his objection before the circuit court, in a motion for post-conviction relief"); *see also State v. Saunders*, 2011 WI App 156, ¶¶28-29, 338 Wis. 2d 160, 807 N.W.2d 679 (concluding that a defendant had forfeited his objection to an alleged sleeping juror, even though he raised the objection in a postconviction motion before the circuit court, by failing to object at the time of trial). The forfeiture rule "is not merely a technicality or a rule of convenience; it is an essential principle of the orderly administration of justice." *Huebner*, 235 Wis. 2d

---

[4] Although case law sometimes refers to this rule as "the waiver rule," it is more accurately described as "the forfeiture rule." *See, e.g.*, *State v. Huebner*, 2000 WI 59, ¶11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727 ("We recognize that labeling this rule the 'waiver rule' is imprecise. It might be better to label the rule requiring issue preservation as the 'forfeiture rule,' because it refers to the forfeiture of a right by silence rather than the intentional relinquishment of a known right."); *see also State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 ("'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

486, ¶11; *see also **Vollmer v. Luety***, 156 Wis. 2d 1, 11, 456 N.W.2d 797 (1990) ("[R]equiring objections at trial allows the trial judge an opportunity to correct or to avoid errors, thereby resulting in efficient judicial administration and eliminating the need for an appeal.").

¶11 "Whether a party has forfeited its right to raise an issue on appeal is a question of law that [an appellate court] review[s] independently." ***Loren Imhoff Homebuilder, Inc. v. Taylor***, 2022 WI 12, ¶10, 400 Wis. 2d 611, 970 N.W.2d 831.

¶12 Here, counsel did not object to the admission of the relevant video footage prior to or during trial. On the day of trial, but before trial had commenced, Kamm's counsel noted as a "preliminary issue" that although counsel was not sure if the prosecutor intended to introduce video footage, counsel had not received any video footage in discovery, and that counsel "wanted to make the [circuit court] aware of that situation." After the prosecutor clarified that he did intend to introduce the video footage, the circuit court told Kamm's counsel, "[Y]ou do have a right to see it. So if you want to review it, we can do that and delay bringing the jury up." In response, counsel stated, "I just don't know if this video, after seeing the footage, if it will affect the case and the way it will move forward." After reviewing the less than ten minutes of video footage, counsel told the court that counsel had reviewed the video footage and was ready for the jury to be brought in.

¶13 Thus, as shown above, counsel noted that he had not received the video footage, and he appeared to acknowledge that, depending on the nature of the video footage, its late disclosure might provide the basis for an objection to its admission. However, after reviewing the video footage, counsel told the court that

he was ready to proceed to trial, and counsel did not object to the prosecutor's intended use of the video footage, request a continuance, or otherwise ask for more time to review the video footage. Nor did counsel object when the video footage was introduced during the trial.[5] By failing to object before or during trial to the admission of the video footage based on the timing of its disclosure, counsel forfeited this objection. Kamm's arguments to the contrary are unpersuasive.

¶14 Specifically, Kamm argues that counsel's statement that "I just don't know if this video, after seeing the footage, if it will affect the case and the way it will move forward," constitutes an objection to the admission of the video footage. This is not a reasonable interpretation of counsel's statements. In making this statement, counsel acknowledged that there might be a basis to object based on the timing of the video footage's disclosure, but counsel equivocated because counsel had not yet seen the video footage. And after reviewing the footage, counsel raised no objection and stated that he was ready for the jury to be brought in.

¶15 As the State argues, if counsel had objected and told the circuit court that counsel had not had enough time to review the video footage and was not prepared to proceed to trial, the court could have granted a longer recess or a continuance. Moreover, had counsel objected after viewing the video footage, the court could have ruled on the objection, including determining whether a statutory discovery violation occurred and, if so, whether there was "good cause" for the

---

[5] Kamm argues that counsel was not required to "reiterate" counsel's objection because it was clear that the circuit court "was simply going to overrule trial counsel's request that the video clips be excluded." I reject this argument because, as stated, I conclude that counsel's statements cannot be construed as an objection to the admission of the video footage in the first instance. Moreover, because Kamm did not object, Kamm's argument about how the court would have ruled on it is speculative.

violation. *See* ***State v. Harris***, 2008 WI 15, ¶15, 307 Wis. 2d 555, 745 N.W.2d 397 (if court determines there was a violation of discovery under WIS. STAT. § 971.23(1), it must then determine whether the State had "good cause" for the violation). Instead, Kamm's counsel indicated that counsel was ready to proceed, the trial went ahead as planned, Kamm was found guilty, and Kamm now asks for a new trial. These facts highlight the very reasons that the forfeiture rule exists: "to cultivate timely objections," ***State v. Erickson***, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999); to "promote[] both efficiency and fairness," ***Huebner***, 235 Wis. 2d 486, ¶11; and to "encourage[] litigation of all issues at one time, simplif[y] the appellate task, and discourage[] a flood of appeals," ***State v. Caban***, 210 Wis. 2d 597, 605, 563 N.W.2d 501 (1997).

¶16    Because Kamm has forfeited the argument that she raises on appeal, I affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9